IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

DANIEL CHAIDEZ-ONTIVEROS,
JOSE LUIS PINEDA,
ROGELIO RAMIREZ-SOLORIO,
MATEO PEREZ, and
RASHEED DANIELS,

                    Defendants.

CRIMINAL CASE NO.

1:11-CR-0264-AT-JFK

## ORDER AND REPORT AND RECOMMENDATION

Pending before the court is Defendant Rogelio Ramirez-Solorio's motion [Doc. 70] for a bill of particulars, and the Government's response [Doc. 77] opposing that motion.  Also pending before the court is Defendant Mateo Perez's initial motion [Doc. 68] and first amended motion [Doc. 76] to suppress evidence seized as a result of a court authorized wire intercept.[1]  The Government opposes [Doc. 78] the motion to suppress.

---

[1]Defendant initially sought to suppress evidence seized from a warrantless search at the Kenwood Creek Apartments [Doc. 68 at 1]; however, Defendant determined that he lacked any connection to that location and has withdrawn his challenge to that search [Doc. 76 at 1].

## I.      Bill of Particulars

Defendant Ramirez-Solorio is named in a federal indictment with a violation of 21 U.S.C. § 846, a conspiracy to possess with the intent to distribute and to distribute at least five kilograms of cocaine, a Schedule II controlled substance, and with a violation of 18 U.S.C. § 1956(h), a conspiracy to engage in money laundering. [Doc. 1]. Defendant seeks a bill of particulars contending that although the "Government has provided voluminous discovery material," the Government did "not identify the evidence against" Defendant "or the factual basis for the charges against him" and did "not specify any theory as to how [Defendant] participated in the conspiracy or what overt acts he committed." [Doc. 70 at 2]. Defendant claims that in order to "adequately prepare his defense," Defendant needs the following additional information: (1) the quantities of cocaine allegedly connected to him as well as the dates and locations associated with his possession, transportation or distribution of the drugs, (2) the financial transactions allegedly connected to him as well as the dates and locations and financial accounts associated with those transactions, and (3) overt acts attributed to Defendant. [Id. at 3]. The Government opposes the bill of particulars arguing that, without sufficiently explaining why the information sought is necessary to preparation of his defense, Defendant is seeking evidentiary detail, the

2

Government's theory of the case, and other information not properly provided by a bill of particulars and pointing out that the Government has provided discovery in this case that addresses the questions raised in the bill of particulars.  [Doc. 77].

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense."  United States v. Warren, 772 F.2d 827, 837 (11th Cir. 1985); see also United States v. Hassoun, 477 F. Supp. 2d 1210, 1227-28 (S.D. Fla. 2007) ("A request for bill of particulars is, *inter alia*, befitting in those instances where defendant seeks further clarity and precision with regard to the charges that he is facing in order to adequately prepare a defense.").  "Generalized discovery is not the proper function of a bill of particulars."  Warren, 772 F.2d at 837 (citing United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981)); see also United States v. Roberts, 174 Fed. Appx. 475, 477 (11th Cir. 2006) (same).  While the court "is vested with broad discretion in deciding whether a bill of particulars should be granted[,]" United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985), "'where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request . . . may constitute

3

reversible error[,]'" id. (quoting United States v. Crippen, 579 F.2d 340, 349 (5th Cir. 1978)).

The instant indictment sets forth the elements of the charged offenses and contains a specific allegation as to the minimal amount of drugs the Government contends was involved in the conspiracy, the latter being relevant for sentencing but not for proof of the underlying offense.  And, likewise, the amount of drugs attributable to each Defendant is not material to whether that Defendant is guilty of the charged conspiracy.[2]  The indictment fully apprises Defendant of the charges.

Additionally, Defendant is not entitled to an accounting of the "overt acts" he committed in furtherance of either of the charged conspiracies.  Overt acts are not elements of either offense, and the Government is not required to prove that Defendant committed such an act in order to obtain a conviction for either count.  See Whitfield v. United States, 125 S. Ct. 687, 694 (2005) (holding "that conviction for conspiracy

---

[2]While the amount of and type of drugs for which each defendant is held responsible may be relevant at sentencing, see United States v. Bacon, 598 F.3d 772, 777-78 (11th Cir. 2010); United States v. Wilson, 314 Fed. Appx. 239, 249-50 (11th Cir. 2009), they are not necessary for a determination of guilt or innocence on the drug conspiracy charged in the indictment and are not elements of that offense, see United States v. Aguirre-Orozco, 340 Fed. Appx. 626, 633 (11th Cir. 2009); United States v. Baker, 432 F.3d 1189, 1233-34 (11th Cir. 2005); United States v. Calderon, 127 F.3d 1314, 1326 (11th Cir. 1997).

4

to commit money laundering . . . does not require proof of an overt act"); United States v. Shabani, 115 S. Ct. 382, 386 (1994) ("proof of an overt act is not required to establish a violation of 21 U.S.C. § 846").

The court notes that the fact discovery materials are provided to Defendant is an appropriate factor to consider in deciding whether a bill of particulars is warranted. See Roberts, 174 Fed. Appx. at 477 ("A bill of particulars is not required where the information sought has already been provided by other sources, such as the indictment and discovery. . . ."); United States v. Al-Arian, 308 F. Supp. 2d 1322, 1359 (M.D. Fla. 2004) ("However, a bill of particulars is not typically warranted in so far as it seeks information already available through other sources.") (citing United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986) ("Nor is the defendant entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection.")); see also United States v. Kunzman, 54 F.3d 1522, 1526 (10th Cir. 1995) (bill of particulars is not necessary when indictment is sufficiently specific and the defendant has access to the government's file); United States v. Caputo, 288 F. Supp. 2d 923, 925 (N.D. Ill. 2003) (same); United States v. Cooper, 283 F. Supp. 2d 1215 (D. Kan. 2003) (same). As the Government outlines, Defendant was provided with a wealth of information in

5

discovery, which was organized in a manner to facilitate examination, to enable him to adequately prepare for a defense at trial.  [Doc. 77 at 3-4 & n.2].

Quite simply, Defendant is seeking evidentiary detail to which he is not entitled in a bill of particulars and which is not pertinent to the trial of this case.  See Roberts, 174 Fed. Appx. at 477 (a bill of particulars "'is not designed to compel the government to detailed exposition of its evidence'") (citation omitted); United States v. Scrushy, 2004 WL 483264, at *9 n.5 (N.D. Ala. March 3, 2004) ("[T]here is a difference between being surprised by the charge and being surprised by the evidence supporting a charge.  The function of the bill of particulars is to reduce surprise at the *charge*, that is, to enable the defendant to identify what he is alleged to have done in violation of law.  It is not to eliminate surprise with respect to evidence offered in support of a charge that is clearly understood by the defendant.") (emphasis in original); United States v. Giffen, 379 F. Supp. 2d 337, 346 (S.D. N.Y. 2004) ("The ultimate test in deciding whether a bill of particulars should be ordered is whether the information sought is necessary, as opposed to helpful, in preparing a defense.").

For these reasons, the court **DENIES** Defendant Ramirez-Solorio's motion [Doc. 70] for a bill of particulars.

## II.    Motion to Suppress Wiretap Evidence

Defendant Mateo Perez seeks to suppress evidence obtained from a May 4, 2010, court authorized wire intercept.  [Docs. 68 and 76].  Prior to the filing of the motion to suppress, the Government filed a memorandum [Doc. 26] notifying Defendant of his burden to establish that he is an "aggrieved person" pursuant to 18 U.S.C. §§ 2518(10)(a) and 2518(11), if he seeks to suppress evidence obtained from one or more of the wire intercepts.  After Defendant filed the initial motion to suppress, the court entered an order [Doc. 73] specifically setting forth Defendant's burden to establish that he is an "aggrieved person" and cautioning Defendant that attempting to rely solely on the Government's theory of or contentions in the case will not satisfy his burden.  The court allowed Defendant until September 1, 2011, to perfect the motion to suppress wire intercept evidence.  [Id. at 2].  On that date, Defendant filed an amended motion to suppress in which he contended that he established that he was an "aggrieved person" and attacked the wire intercept authorization on the grounds that the affidavit in support of the order did not set forth sufficient facts to demonstrate necessity.  [Doc. 76].  The Government opposes the motion arguing first that the Defendant has not shown that he is an "aggrieved person" and, in any event, that the affidavit establishes necessity for the wire intercept.  [Doc. 76].  After consideration

7

of Defendant's and the Government's arguments, legal authority, and the wire intercept application, affidavit and order, the court agrees with the Government on both points and recommends that Defendant's motions be denied.

### a.   Background Facts

On May 4, 2010, District Judge Timothy C. Batten, Sr., signed an order authorizing the interception of cellular telephone number 336-235-9841 (TT #3), subscribed to Mirna Flores and used by "FNU LNU a/k/a LOCO" for a period of thirty days. [Docket Entry filed Under Seal October 18, 2011, Exhibit A, Order Authorizing the Interception of Wire Communications, ¶ B.b.].[3]  One of the named "Named Interceptees" was "FNU LNU a/k/a LOCO."  [Id., ¶ B].  In that order, Judge Batten found that the interception:

> will likely identify and provide admissible evidence concerning (i) the nature, scope, extent and methods of operation of the controlled substance business of the Target Subjects and others yet unknown; (ii) the identities and roles of accomplices, aiders and abettors, co-conspirators, sources of supply, and other participants in their illegal activities; (iii) the distribution and transfer of the contraband and money involved in those activities; (iv) the existence and location of records; (v) the existence, location and source of resources used to finance their illegal activities; (vi) the location and disposition of proceeds from those activities; and (vii) the locations and items used in furtherance of those activities.

---

[3]District Judge Batten entered an order filing Exhibit A, which contains the Application, Affidavit, and Wire Intercept Order under seal.

[Id., ¶ B.b.].  The District Judge also found that "[n]ormal investigative procedures have been tried and failed or appear unlikely to succeed if attempted, or are too dangerous."  [Id., ¶ C.].

In the application for the interception order, "FNU LNU a/k/a LOCO," is identified as one of the "Named Interceptees" which also identifies TT #3 as being used by "FNU LNU a/k/a LOCO" although subscribed to by Mirna Flores.  [Docket Entry filed Under Seal October 18, 2011, Exhibit A, Application for the Interception of Wire Communications, ¶ 2. and 2.b.].  In Attachment B to the application, Jason H. Payne was the affiant in the Affidavit in Support of Application.  [Docket Entry filed Under Seal October 18, 2011, Exhibit A, Application for the Interception of Wire Communications, Attachment B, Payne Affidavit].  After providing details as to his background, training and experience, as well as information about the source of the facts set forth in the affidavit, Payne identified the "Named Interceptees" as including "FNU LNU a/k/a LOCO," and TT #3 as being used by that individual although subscribed to by Mirna Flores.  [Id., ¶¶ 2.-10., 11.b.].  The offenses which are the subject of the wire intercept are violations of the federal drug laws, 21 U.S.C. §§ 841, 843, 846, 952, 960 and 963, as well as violations of the federal money laundering statutes, 18 U.S.C. §§ 1956 and 1957.  [Id., ¶12.].

9

Payne next summarized the background facts establishing probable cause for TT #3, which Defendant does not contend is not established in the affidavit; he then set forth the need for interception of TT #3.  [Id., ¶¶ 16., 26.-66.].  Payne stated his belief that the wire intercept was necessary to accomplish the goals of the investigation which include:

> (a) the identities of all the individuals involved in this organization; (b) the current locations of the NAMED INTERCEPTEES and their unidentified accomplices; (c) the present operations and scope of the drug trafficking activities of this organization in Atlanta and elsewhere; (d) the methods of importing and transporting narcotics from Mexico through Texas to Atlanta; (e) the methods of disposing of the bulk currency that constitutes the proceeds of this drug trafficking; (f) the current significant customers of this organization in Atlanta and elsewhere; (g) the locations where members of this organization store their narcotics and/or drug proceeds; and (h) dismantling the organization by convicting the highest level supervisors and leaders, and seizing all assets of the organization and its members.

[Id., ¶ 34.].  The affiant further stated that the investigation had failed to identify and locate all of the primary targets of the organization and the stash houses used by the organization and noted that the goals of the investigation were not to simply identify and prosecute "NAMED INTERCEPTEES" but all co-conspirators operating in other cities and in Mexico as well as other cells of the organization.  [Id., ¶¶ 35.-36.].

10

Based on the intercepts to date and debriefing of a confidential informant, Payne stated that organization members compartmentalize operations and use of cellular telephones such that interception of no single cellular telephone will accomplish the goals of the investigation and that the investigation to date, including use of the confidential informant, had not accomplished the goals of the investigation. [Id., ¶¶ 37.-38.]. Payne then addressed specifically the shortcomings and ineffectiveness of various traditional investigative methods in accomplishing those goals, including, other wiretap interceptions, pen register and toll record analysis, physical surveillance, the grand jury, interviewing witnesses and subjects, and search warrants, consent searches and trash pulls and explained why use of these techniques in the future likewise will not accomplish the goals of the investigation. [Id., ¶¶ 39.-54., 63.-66.].

Payne also specifically addressed prior and continued use of traditional investigative techniques particularly relevant to Defendant's necessity argument, that is, confidential informants, cooperating sources and consensual monitoring. [Id., ¶¶ 55.-62.]. Noting that CS-1 had provided information about a few of the targets of the investigation, including Defendant Perez, Payne stated that he did not believe that additional informants would be developed that would provide more than historical information. [Id., ¶¶ 55., 58.]. And, while CS-1 was continuing to provide information

11

and active cooperation, Payne stated that he/she "is incapable of identifying every member of this organization" and that he/she "wishes to limit the extent of his/her cooperation, for fear of retaliation against his/her family members. . . ." [Id., ¶ 56.]. Payne also noted that the intercepts are necessary as corroboration for the information provided by informants and witnesses who "often have credibility issues. . . ." [Id., ¶ 59]. Payne stated that the same limitations outlined regarding use of CS-1 generally to accomplish the goals of the investigation applies to his/her use for consensual monitoring, that is, while he/she may be able to communicate with some of the targets, "he/she cannot ignore the rank and structure within this organization" and that attempts "to 'jump rank' within this [organization] would immediately arouse suspicion. . . ." [Id., ¶ 61.]. Finally, Payne stated his belief that members of the organization are unlikely to discuss details about the organization or its members with informants, undercover agents or witnesses who are merely buyers or customers. [Id., ¶ 62.].

Payne completed his affidavit by outlining the minimization procedures to be utilized in conducting the intercept. [Id., ¶¶ 67.-72.]. Defendant does not challenge minimization of the intercepts. [Doc. 76].

### b.    Aggrieved Person

"When information is obtained in violation of the [Federal Wiretap] Act, 'no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial.' . . .  But only an 'aggrieved person . . . may move to suppress' a communication that was 'unlawfully intercepted.'"  United States v. Faulkner, 439 F.3d 1221, 1223 (10th Cir. 2006) (citation omitted).  An "aggrieved person," as defined both by the Act, 18 U.S.C. § 2510(11), and in accordance with the Supreme Court's decision in Alderman v. United States, 89 S. Ct. 961, 968 & n.9 (1969), indicates that the Act's standing requirement implements existing Fourth Amendment standing rules.  "Generally, to establish standing the movant must show that (1) he was a party to the communication, (2) the wiretap efforts were directed at him, or (3) the interception took place on his premises."  Faulkner, 439 F.3d at 1223; see also United States v. Apple, 915 F.2d 899, 905 (4th Cir. 1990) (same).  Defendant bears the burden of establishing that he is an "aggrieved person."  United States v. Degaule, __ F. Supp. 2d __, 2011 WL 2518803, at *8 n.14 (N.D. Ga. June 24, 2011) ("In order to contest an order permitting the interception of communications, a defendant must establish that he was an aggrieved person.") (citation and internal quotation marks omitted); United States v. Vasconcellos, 658 F. Supp. 2d 366, 382

(N.D. N.Y. 2009) ("defendants must initially prove that they are aggrieved in order to establish their standing"); United States v. Ortega-Estrada, 2008 WL 4716949, at *2 (N.D. Ga. October 22, 2008) (same); accord United States v. Cooper, 203 F.3d 1279, 1283-84 (11th Cir. 2000) (noting that it is a defendant's burden to prove that he has a legitimate expectation of privacy in the object of the search).

   And a defendant cannot rely on the Government's position, contention or theory to establish standing and must instead prove his expectation of privacy as to a particular search, including, that he is an "aggrieved person" under the Act. See, e.g., United States v. Bell, 218 Fed. Appx. 885, 895 (11th Cir. 2007) (finding that the defendant, who had testified that he had no interest in the location of the search, "cannot adopt the government's evidence" that he did have an interest "for the limited purpose of establishing standing while challenging the validity of this same evidence"); United States v. Long, 302 F.3d 1095, 1100 (9th Cir. 2002) (a defendant "is not 'entitled to rely on the government's allegations in the pleadings, or positions the government has taken in the case, to establish standing'") (citations omitted); Apple, 915 F.2d at 907 (finding that the defendant's failure to aver that he made calls to the number intercepted during the interception period and that citation to grand jury

14

testimony that "amounts to no more than 'mere suspicion' that he might have talked" on the intercepted phone did not establish standing).

In support of his attempt to establish that he is an "aggrieved person" as to TT #3, Defendant through his attorney, citing to the application for the wire intercept order, contends that he has standing "because the wiretap efforts involving TT3 were, *by the Government's own acknowledgment in this case*, directed at Movant at least in part." [Doc. 76 at 3 (emphasis added)]. He further asserts that the application identifies "Loco" as a target of the wire intercept and that the affidavit in support discusses the involvement in the alleged crimes by "Loco." [Id. at 4]. Defendant's brief in support of standing also notes that the order authorizing the wire intercept refers to "Loco" as being a target. [Id.]. He notes that the indictment in the caption and text specifies that "Loco" is Defendant Perez, as does wire intercept transcripts and synopses provided in discovery by the Government. The Government correctly responds that Defendant has not presented any factual basis, independent of the Government's contentions, establishing that he is an "aggrieved person." [Doc. 78 at 2-6].

Defendant, in fact, did exactly what the court cautioned him not to do, he relied on the Government's position and theory of the case, that is, that the Government

15

believes that "Loco" is Defendant Perez.  He made absolutely no assertion that he is, in fact, the "Loco" who was a target of TT #3, that his voice was intercepted on TT #3, or otherwise that the wire intercept was directed at him.  His motion is glaringly silent as to his proof - not the Government's - that he is an "aggrieved person."  See United States v. Thompson, 171 Fed. Appx. 823, 828 (11th Cir. 2006) (Because the "only fact Thompson alleged in his motion to suppress relating to standing was that the 'government contends [room 241] to be a room rented by or to the defendant[,]'" the appellate court "agree[d] with the district court that this allegation is not sufficient to establish standing."); United States v. Singleton, 987 F.2d 1444 (9th Cir. 1993) (holding that the district court erred in relying solely on the government's theory of the case in finding that the defendant had standing to contest the search); United States v. Cody, 434 F. Supp. 2d 157, 167 (S.D. N.Y. 2006) ("a district court may not grant a defendant standing to pursue a suppression motion 'relying solely on the government's theory of the case,' because to do so would amount to 'an evisceration of the defendant's burden of proof as established by the Supreme Court'") (quoting United States v. Watson, 404 F.3d 163, 166 (2nd Cir. 2005)); United States v. Holland, 985 F. Supp. 587, 601 (D. Md. 1997) (the defendant's attempt to establish standing by relying on the government's contentions in briefs filed or on the averments in an affidavit for

16

a search warrant setting forth the affiant's observations and beliefs deemed by the court "misplaced" because the defendant "cannot assert his proprietary interest and reasonable expectation of privacy in [the location searched] through the government's pre-search theory and witnesses"); United States v. Montoya-Eschevarria, 892 F. Supp. 104, 106 (S.D. N.Y. 1995) (the defendant's unsworn contention that the Government believes that the defendant's voice is on the wire intercept, while maintaining the option of later denying that it is his voice, does not meet his burden of establishing that he is an "aggrieved person").

For these reasons, the court finds that Defendant has not established, although offered the opportunity to do so with specific guidance as to how to make the showing, that he is an "aggrieved person" and, therefore, cannot challenge the wire intercept on TT #3.

### c.    Necessity

However, even if the District Court determines that Defendant established that he is an "aggrieved person," his motion to suppress the wire intercept over TT #3 should not be granted.   The affidavit offered in support of the intercept order established necessity.  Defendant's challenge to necessity for the wire intercept focuses solely on whether the Government established necessity for the intercept for "Loco."

17

Defendant actually concedes that the affidavit establishes necessity for the intercept to accomplish the stated goals of the investigation as to other targets but contends, due to the cooperation provided by CS-1, that the affidavit does not establish that other traditional investigative techniques are not sufficient. [Doc. 76 at 5-6]. Defendant's argument evidences a fundamental misunderstanding of the showing that the Government is required to make to establish necessity for a wire intercept and the appropriate focus of the necessity showing.

Initially, the court notes that a wiretap order is presumed to be valid and that a defendant has the burden of overcoming this presumption and of proving that the wiretap order was unlawfully obtained. See United States v. Mitchell, 274 F.3d 1307, 1310 (10th Cir. 2001) ("a wiretap authorization order is presumed proper, and a defendant carries the burden of overcoming this presumption") (citations and internal quotation marks omitted); Wilson, 314 Fed. Appx. at 243 ("The judge to whom the wiretap application is made is clothed with broad discretion in considering the application[.]"); United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990) ("We have also said that the practical nature of the [district judge's] decision justifies 'great deference' upon review and calls for upholding the [district judge's] findings even in marginal or doubtful cases."). With respect to the showing of necessity, an application

18

for interception must contain a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.  18 U.S.C. § 2518(1)(c); United States v. Carrazana, 921 F.2d 1557, 1564-65 (11th Cir. 1991); United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986).  "Full and complete" means a description with specificity as to why in this particular investigation ordinary means of investigation would fail or are too dangerous.  United States v. Weber, 808 F.2d 1422 (11th Cir. 1987); see also United States v. Cartagena, 593 F.3d 104, 110 (1st Cir. 2010) (the statute's "'full and complete statement' requirement does not mandate that officers include every single detail of an investigation, even if relevant to the need for a wiretap[,]" that is, "[p]rovided that sufficient facts are included supporting the need for a wiretap over other investigative procedures, the officer need not set forth the minutiae of an investigation").  The necessity requirement is designed to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed.  United States v. Giordano, 94 S. Ct. 1820, 1826-27 (1974); United States v. Kahn, 94 S. Ct. 977, 983 n.12 (1974).

The affidavit need not, however, show a comprehensive exhaustion of all possible techniques but must simply explain the retroactive or prospective failure of

several investigative techniques that reasonably suggest themselves. <u>Nixon</u>, 918 F.2d at 901; <u>Van Horn</u>, 789 F.2d at 1496; <u>United States v. Alonso</u>, 740 F.2d 862, 868 (11th Cir. 1984); <u>United States v. Hyde</u>, 574 F.2d 856, 867 (5th Cir. 1978). As the Eleventh Circuit Court of Appeals recently reaffirmed, "[A] comprehensive exhaustion of all possible investigative techniques is not necessary before applying for a wiretap." <u>United States v. De La Cruz Suarez</u>, 601 F.3d 1202, 1214 (11th Cir. 2010); <u>see also</u> <u>Cartagena</u>, 593 F.3d at 110-11 ("We have never required the government to 'run outlandish risks or to exhaust every conceivable alternative before seeking a wiretap[.]'") (citation omitted). The court continued stating, "The statute was not intended 'to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.'" <u>De La Cruz Suarez</u>, 601 F.3d at 1214 (quoting <u>Alonso</u>, 740 F.2d at 868). Thus, "[t]he burden of establishing necessity is 'not great,' and [a reviewing court] must review the government's compliance with the necessity requirement in a 'practical and common-sense fashion.'" <u>United States v. Gray</u>, 410 F.3d 338, 343 (7th Cir. 2005) (citation omitted); <u>see also</u> <u>United States v. Oriakhi</u>, 57 F.3d 1290, 1298 (4th Cir. 1995) (the burden imposed upon the government "is not great" and "the adequacy of such a

showing is to be tested in a practical and common sense fashion") (citations and internal quotation marks omitted); United States v. De La Fuente, 548 F.2d 528, 538 (5th Cir. 1977) ("The [necessity] provisions contemplate that 'the showing be tested in a practical and commonsense fashion.'") (citation omitted).

Contrary to Defendant's argument, the effectiveness of traditional investigative techniques must be judged in light of the goals of the investigation and not based on whether one or more of the conspiracy participants can be successfully prosecuted. See United States v. Reed, 575 F.3d 900, 909-10 (9th Cir. 2009) ("This court has 'consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of . . . other satellite conspirators.'") (citation omitted); United States v. Wilson, 484 F.3d 267, 281 (4th Cir. 2007) ("wiretaps 'are necessary tools of law enforcement, . . . particularly where crimes are committed by large and sophisticated organizations[,]'" accordingly, "[c]ourts must be careful not to read the statute in 'an overly restrictive manner' . . . which could result in helping insulate more complex and sophisticated conspiracies") (citation omitted); United States v. Sobamowo, 892 F.2d 90, 93 (D.C. Cir. 1989) ("Circuit precedent clarifies that a court may authorize the wiretap of the phone of a member of an operation if traditional

AO 72A
(Rev.8/82)

investigative techniques have proved inadequate to reveal the operation's full nature and scope.") (citations and internal quotation marks omitted).

Payne's affidavit sets forth the goals of the investigation which involve much more than identifying and prosecuting one or more the targets of the wire intercepts.[4] [Docket Entry filed Under Seal October 18, 2011, Exhibit A, Application for the Interception of Wire Communications, Attachment B, Payne Affidavit, ¶¶ 34.-36., 38.]. Payne specifically discussed the cooperation and information provided by CS-1 against "Loco" and a few other targets of the investigation, which included making consensual calls to "Loco" to discuss and arrange drug transactions. [Id., ¶¶ 37., 55.-56., 61.]. However, he also explained why such cooperation had not yet and would not accomplish the goals of the investigation which were not satisfied by merely identifying and prosecuting a few members of the organization. [Id., ¶¶ 35.-38., 55., 58., 61.-62.]. And, as to this informant's cooperation against "Loco," he even explained why the wire intercept would provide corroboration due to potential credibility issues all informants face. [Id., ¶ 59.]. Defendant's focus on necessity to intercept Loco in order to prosecute Loco simply misses the mark. In Reed, the Ninth

---

[4]And the court notes that those goals are similar to the findings of the District Judge in granting the wire intercept. [Docket Entry filed Under Seal October 18, 2011, Exhibit A, Order Authorizing the Interception of Wire Communications, ¶ B.b.].

AO 72A
(Rev.8/82)

Circuit Court of Appeals stated, "Second, the necessity requirement is directed at the objective of the investigation as a whole, and *not to any particular person*.  If the Government can demonstrate that ordinary investigative techniques would not disclose information covering the scope of the drug trafficking enterprise under investigation, then it has established necessity for the wiretap. . . .  As with probable cause, 'the government ha[s] *no duty* to establish [necessity] *as to each possible interceptee*.  It is sufficient that there was [necessity] to tap the phone.'"  575 F.3d at 911-12 (citation omitted; emphasis added).

And the fact of successful use informants does not foreclose use of wiretaps.  In United States v. Canales Gomez, 358 F.3d 1221 (9th Cir. 2004), the Ninth Circuit Court of Appeals discussed the successful use of informants, which was pointed to by the defendant as evidence of the lack of necessity in the wiretap affidavit.  The court, after noting that the wiretap affidavit explained why the informants would be unlikely to secure information about the entire criminal network under investigation, stated:

> Indeed, we have previously acknowledged the limitations of individual informants in such broad investigations and often upheld government requests for such wiretaps when large-scale organizations are under investigation. . . . The informants' previous success is inapposite. "[T]he mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap."

AO 72A
(Rev.8/82)

Id. at 1225 (citations omitted); see also United States v. McGuire, 307 F.3d 1192, 1197-98 (9th Cir. 2002) (noting that findings of necessity are upheld where traditional investigative methods, including use of informants, only identify and lead to the prosecution of some members of a conspiracy, the court rejected the defendant's argument that necessity was not established because informants had infiltrated the conspiracy and stated, "[n]ot only common sense but also our precedent confirms that the existence of informants and undercover agents does not preclude a necessity finding"); United States v. Bankston, 182 F.3d 296, 306 (5th Cir. 1999) (use of informants would not result in infiltration of high levels of organization).  There is simply no information before the court that even suggests that utilization of the informant identified in this case would have resulted in achieving the goals of the investigation.

In light of this legal authority and based on the detailed information provided in the affidavit establishing necessity for the wire intercept on TT #3 to achieve the goals of the investigation, the court finds that Defendant has failed to overcome the presumption of validity that attaches to District Judge Batten's finding that the necessity provision of the Act has been satisfied by facts set forth in the wiretap affidavit presented to him.  Mitchell, 274 F.3d at 1310.

For these reasons, the court **RECOMMENDS** that Defendant Mateo Perez's motions [Docs. 68 and 76] to suppress be denied.

## III.    Conclusion

For the foregoing reasons and cited authority, the court **ORDERS** that Defendant Ramirez-Solorio's motion [Doc. 70] for a bill of particulars be **DENIED** and **RECOMMENDS** that Defendant Perez's motions [Docs. 68 and 76] to suppress be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case as to all Defendants.[5]

---

[5]Defendant Rasheed Daniels' Motion to Suppress Statements [Doc. 67] and Defendant Jose Luis Pineda's Motion [Doc. 69] for Production of Presentence Reports of Government Witnesses and Motion for In Camera Review of Contents of Presentence Reports are deferred to the trial court.  [See Doc. 72].

25

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**SO RECOMMENDED AND ORDERED** this 25th day of October, 2011.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

26